IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

NASIR MUNTASER,

                Plaintiff,                Case No. 3:05 CV 751

  -vs-

                                                       MEMORANDUM OPINION

MARGARET BRADSHAW,

                Defendant.

KATZ, J.

This matter is before the Court on Petitioner Nasir Muntaser's objections (Doc. 47) to the July 31, 2009, Report and Recommendation ("R&R") of the United States Magistrate Judge (Doc. 44), recommending that the Court deny the petition for a writ of habeas corpus.. In accordance with *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate Judge's findings to which the Plaintiff objects. For the following reasons, the Court finds Plaintiff's objections are not well taken and the same are denied.

**I. Background**

The Magistrate Judge provided the following description of the factual background of this case in her earlier R&R of December 29, 2005:

> Petitioner owned Nick's Superette, a convenience store [ ("the store") ] located on 125th Street in Cleveland, Cuyahoga County, Ohio. Petitioner lost his food stamp license, and in January 2000, he transferred title of the store to Ali Alnajada [ ("Alnajada") ] to operate the store and obtain a new food stamp license. Alnajada paid rent while Muntaser remained the true owner of the store.
> The business failed to flourish financially and Alnajada's food stamp license was revoked. Petitioner decided to burn the store and collect the insurance money. He agreed to pay Alnajada $5,000 from the insurance proceeds. Petitioner obtained an insurance policy during the Summer, 2001 which included $55,000 coverage for fire loss. As the legal owner of the store, Alnajada signed the insurance papers.

Muntaser made the first premium payment and Alnajada made two subsequent payments.

In January 2002, Petitioner implemented his plans to burn the store by hiring Tayser Marzouk [ ("Marzouk") ] to set the fire. As a part of the plan, Marzouk coordinated the events leading up to the fire. Initially, he staged a break-in by cutting a hole in the wall in an attempt to establish the appearance of neighborhood animosities toward the store and to create a perceived motive for the arsonist. Alnajada threw the cash register on the floor and scattered money and then reported a burglary to the police. A police investigation ensued.

Meanwhile, Marzouk enlisted the assistance of Anthony Pascol [ ("Pascol") ], an acquaintance who believed that Marzouk was the store's owner, to help him move property from the store. On January 22, 2002, Marzouk and Pascol loaded items from the store into Marzouk's van, Pascol went outside and drank a beer. Upon returning into the store, he observed Marzouk spreading gasoline on the floor. Prior to obtaining an explanation from Marzouk regarding the use of gasoline, Marzouk was fatally injured in an explosion. Pascol sustained serious burns. Considerable damage was sustained by the neighboring occupied duplex.

The Cleveland Arson Unit investigator concluded that the gasoline fumes traveled down to the basement, mixing with the pilot light on the water heater and causing an explosion. Alnajada originally denied any knowledge of the fire's origin; however, once he failed a polygraph examination, he confessed to his participation in the plan to burn the store. He wore a wire and obtained a taped conversation in which Petitioner discussed the crime and admitted that he participated in the staged break-in by giving Marzouk the key.

* * *

Petitioner was arrested and charged in a nine-count indictment alleging one count of murder, seven counts of aggravated arson, and one count of arson (Docket No. 9, Exhibit 2). A jury returned guilty verdicts on all nine counts (Docket No. 9, Exhibit 4). In October 2002, the court imposed a prison term at Lorain Correctional Institution of eight years as to each of counts one, two, three, four, six, seven and eight, one year as to count five; and fifteen years to life as to count nine. Counts one, two, three, four and five were to run concurrently; counts six, seven, and eight were to run consecutively to each other but concurrently with counts one, two, three, four and five but consecutively to count nine. Count nine to run consecutively to counts six, seven and eight and concurrently to counts one, two, three, four and five for a total sentence of 39 years to life (Docket No. 9, Exhibit 5). At the time he filed the Writ, Petitioner was incarcerated at Mansfield Correctional Institution [ ("MCI") ] where Respondent is the warden (Docket No. 1).

Petitioner filed an appeal in the Court of Appeals for the Eighth Appellate District contesting the validity of the jury instructions, his conviction and sentences. The Court of Appeals affirmed the trial court's judgment (Docket No. 9, Exhibit 9). Petitioner presented the same claims to the Ohio Supreme Court (Docket No. 9, Exhibit 11). The Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal (Docket No. 9, Exhibit 9).

> Petitioner filed supplemental motions in the appellate court (Docket No. 9, Exhibits 14 & 17). The Court of Appeals denied the motion for ineffective assistance of counsel and motion to supplement (Docket No. 9, Exhibits 16 & 18). The Supreme Court of Ohio dismissed the appeal (Docket No. 18, Exhibit 1).
> Petitioner filed a motion for delayed new trial in the common pleas court (Docket No. 9, Exhibit 19). The common pleas court denied the motion for delayed new trial (Docket No. 9, Exhibit 22). The Court of Appeals affirmed the common pleas court denial of the motion for a delayed new trial (Docket No. 9, Exhibit 28). The Supreme Court of Ohio dismissed the appeal (Docket No. 18, Exhibit 2).
> Petitioner filed a Writ for Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket 1), Respondent filed an Answer (Docket No. 9) and Petitioner filed a Traverse and Brief in support (Docket No. 18).

*Muntaser v. Bradshaw*, Magistrate's Report and Recommendation, No. 1:05-cv-00751, Doc. 19 at 2-4 (N. D.Ohio Dec. 29, 2005) (citing *State v. Muntaser*, 2003 WL 22455703, *1-*2 (Ohio App. 8 Dist. Oct. 30, 2003)).

In her December 29, 2005 R&R, the Magistrate Judge recommended denying the writ. Petitioner filed objections on February 8, 2006 (Doc. 23), and Respondent replied on February 13, 2006 (Doc. 25). In a memorandum opinion issued on January 24, 2007, this Court adopted the Magistrate Judge's December 29, 2005 R&R and denied the writ. (Doc. 26). In that opinion, the Court rejected Petitioner's arguments that the jury instructions given by the trial judge violated due process of law, that his trial counsel rendered ineffective assistance by failing to move for a continuance of the trial date, and that the Ohio felony murder statute he was convicted under was unconstitutional.

On February 2, 2007, Petitioner filed a "Motion for a New Trial or to Alter or Amend the Judgment." (Doc. 28). Petitioner's main contention in that filing was that this Court incorrectly applied a "cause and prejudice" standard to his ineffective assistance of counsel claims, as his claims were not procedurally defaulted. Petitioner also reiterated his argument that the jury instructions employed in his case were unconstitutionally confusing.

3

This Court denied this motion in memorandum opinion and order issued on November 30, 2007. (Doc. 29). In that opinion, the Court rejected the argument that Petitioner received ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court noted, "in addition," that Petitioner's ineffective assistance claim was procedurally defaulted because it had not been presented in a direct appeal to the Ohio Supreme Court, and was therefore barred under the doctrine of *res judicata*. (Doc. 29 at 3). The Court went on to again reject Petitioner's challenge to the jury instructions used at his trial. The Court did, however, *sua sponte*, grant a certificate of appealability pursuant to 28 U.S.C. § 2253.

Petitioner filed a notice of appeal with the Sixth Circuit on December 21, 2007. (Doc. 30). While the case was pending in the Sixth Circuit, Ohio's Attorney General, Nancy Rogers, sent a letter to the Circuit dated October 28, 2008. (Doc. 39). In her letter, she explained that the Ohio Supreme Court's opinion in *State v. Davis*, 119 Ohio St. 3d 422, 2008-Ohio-4608 (2008), held it to be error for a state appellate court to deny a timely motion under Ohio Rule of Appellate Procedure 26(B) for reopening of an appeal on the basis of *res judicata*. Rogers noted that in Muntaser's case, the state appellate court denied, on *res judicata* grounds, his *pro se* motion for reopening of his appeal due to ineffective assistance of appellate counsel. With respect to the ineffective assistance claims in Muntaser's 28 U.S.C. § 2254 petition, she said that "[r]espondent argued, and the district court found that those claims were procedurally defaulted because the state appellate [sic] had found that they were barred from review on the basis of res judicata." (Doc. 39 at 2). Claiming that *Davis* "undermined" this Court's finding of procedural default, she reported that the Respondent "suggests that the oral argument currently scheduled for December 2, 2008, be cancelled and the case be remanded to the district court with instructions to review the

4

ineffective assistance of appellate counsel claims that were raised in Muntaser's Rule 26(B) application." (Doc. 39 at 3).  On November 20, 2008, the Sixth Circuit granted the motion; it relinquished jurisdiction and granted an unconditional remand. (Doc. 32).

Throughout 2009, the case was once again briefed before the United State Magistrate Judge.  On July 31, 2009, the Magistrate Judge issued an R&R recommending again that Muntaser's habeas petition be denied. (Doc. 44).  Petitioner filed an objection to the R&R on September 11, 2009. (Doc. 47).  This Court conducts a *de novo* review of the Magistrate's R & R. 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

**II. Standard of Review**

The standards set forth in Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254(d), govern a federal district court's review of a state court decision on a writ of habeas corpus.  *French v. Jones,* 332 F.3d 430, 435-436 (6th Cir. 2003).  The statute establishes two circumstances in which a federal court may issue a writ.  First, a federal court may issue a writ if the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  Second, a federal court may issue a writ if the state court's decision was based on an unreasonable determination of the facts in light of the evidence.  § 2254(d)(2).

A state court's decision is "contrary to" the clearly established federal law when either the decision contradicts the Supreme Court's holdings or it "'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from this precedent.'" *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)).  A state court's decision

unreasonably applies Supreme Court holdings "if the state court identifies the correct governing legal principle from the Supreme Court but unreasonably applies that principle to the facts of petitioner's case." *Id*. (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotation marks omitted)).

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id*.

## III. Discussion

In his Objection, Petitioner renews his argument that the jury instruction given by the trial court failed to instruct the jury on every element of the offense, in violation of the Fourteenth Amendment's guarantee of due process of law. Though it is not clear from the Objection whether this is intended to be a freestanding Fourteenth Amendment claim or part of an ineffective assistance of counsel claim, the Court will consider the argument from both of these angles.[1]

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The Supreme Court recently reiterated the relevant standards to be applied when considering a constitutional challenge to jury instructions in a criminal trial:

---

[1] Muntaser's appellate counsel raised a challenge to the jury instructions on direct review. See *State v. Muntaser*, 2003 WL 22455703, *2-*5 (Ohio App. 8 Dist. Oct. 30, 2003). The Ohio appellate court found that Muntaser's counsel had not objected to the instructions at trial, and proceeded to consider Muntaser's challenge to the jury instructions under a "plain error" standard. *Id*. at 2. Therefore, at a minimum, it is clear that this claim is not a part of the apparent ineffective assistance of appellate counsel argument that the Ohio Attorney General felt warranted a remand to this Court. Indeed, it does not clearly appear from Petitioner's Objection (Doc. 47) that *any* of the claims in his § 2254 petition involve ineffective assistance of appellate (as opposed to trial) counsel.

6

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.

*Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009) (internal citations and quotation marks omitted).

This Court considered Petitioner's challenge to the jury instructions in its previous memorandum opinion of January 24, 2007. (Doc. 26 at 8-9). Having reviewed the issue once again, the Court adheres to its earlier analysis and conclusion on this point: "Considering the entirety of the instructions, the Court does not find that the jury could have been reasonably confused by the instructions . . . . As a whole, the instructions are clear on the concept of felony murder, and there is every indication that the jury followed the instructions accurately." *Id*. Therefore, this Court agrees with the Magistrate Judge's finding that "Counsel's failure to object to these instructions was not outside the prevailing norms of competence[,] as the challenged instructions were reasonable." (Doc. 44 at 7).

Petitioner next argues that his trial counsel rendered ineffective assistance by failing to cross-examine prosecution witness Anthony Pascol. But this Court agrees with the Magistrate Judge's finding that trial counsel reasonably believed that he would not be able to impeach Pascol's testimony on cross-examination and that, even if trial counsel had found evidence to impeach Pascol's testimony, it would not have made a difference in the outcome of the trial, because Pascol's testimony did not implicate Petitioner in either murder or arson. (Doc. 44 at 8-9).

The Court also agrees with the Magistrate Judge's conclusion that Petitioner's claims of

improper prosecutorial vouching for witnesses are without merit. Because Pascol's testimony did not implicate Petitioner in any criminal wrongdoing, the prosecutor's act of vouching for Pascol's testimony (or Petitioner's attorney's failure to object thereto) does "not reach the level of reversible error." (Doc. 44 at 9).

Petitioner's argument that his trial counsel was ineffective because he failed to request a continuance of the trial date from September 11, 2002, is similarly without merit. The Court previously considered Petitioner's contentions in this regard at length in the January 24, 2007 memorandum opinion and concluded that "this Court cannot find a due process violation based solely on the date of the trial where there was no misconduct by the prosecutor, the defense counsel, or the court." (Doc. 26 at 9-12). The Court is persuaded that its earlier conclusion remains correct. As the Magistrate Judge noted, "Either before or after 9/11, Petitioner was unable to obscure his ethnicity. Consequently, counsel's actions, viewed from his perspective at the time, were reasonable considering that he could have used the voir dire to uncover bias or prejudice from perspective jurors." (Doc. 44 at 12).

Finally, Petitioner claims that "there was a failure of counsel to seek appropriate relief concerning the failure to provide discovery." (Doc 47 at 11). The record reveals that, at trial, the prosecutor called a witness whose identity had not been revealed prior to trial. But as the Magistrate Judge noted, Petitioner's trial counsel did object to the prosecutor's calling of this witness, and the trial judge, in response, afforded Petitioner's counsel additional time to prepare for his cross-examination of the new witness. Petitioner fails to explain how any error his trial counsel made in this regard was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

8

**IV. Conclusion**

For the above stated reasons, the findings and recommendations of the Magistrate are adopted. For the reasons stated in its earlier memorandum opinion of November 30, 2007 (Doc. 29 at 4-5), the Court grants a certificate of appealability pursuant to 28 U.S.C. § 2253 as to all issues raised by Petitioner.

Muntaser's petition for a writ of habeas corpus is denied.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE